UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-111-TBR

BFC ENTERPRISES, LLC,                                                           PLAINTIFF

v.

CITY OF MURRAY, KENTUCKY,                                                      DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant City of Murray, Kentucky's, ("Murray"), Motion to Dismiss. [R. 7.] Plaintiff BFC Enterprises, LLC, ("BFC"), responded, [R. 8], and Murray replied, [R. 14.] Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Murray's Motion to Dismiss, [R. 7], is GRANTED.

**BACKGROUND**

The factual allegations as set out in the Complaint, [R. 1], and taken as true are as follows.[1] In 1982, the Kentucky General Assembly enacted KRS 243.075, which authorized "[a] qualified city or a county containing a qualified city . . . to impose a regulatory license fee upon the gross receipts of the sale of alcoholic beverages of each establishment therein licensed to sell alcoholic beverages." KRS 243.075(1)(a). The legislation allowed the fee to be levied "at the beginning of each budget period at a percentage rate as shall be reasonably estimated to fully reimburse the local government for the estimated costs of any additional policing, regulatory, or administrative expenses related to the sale of alcoholic beverages in the city and county." KRS 243. 075(1)(b). On September 13, 2012, the City of Murray enacted an Alcohol Beverage

---

[1] *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) ("All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.").

1

Ordinance that established such regulatory license fees. [R. 1 at 3 (Complaint).] Section 2.5 of the Alcohol Beverage Ordinance states:

> Pursuant to KRS 243.075, there is hereby imposed a regulatory license fee on the gross receipts of sale of alcoholic beverages of each license issued by the City ABC Administrator. As of the time of adoption of this ordinance, the regulatory license fee shall be eight percent (8%) of gross sales of all alcoholic beverages sold by the drink. In the case of retail sales of package distilled spirits and wine, the regulatory license fee shall be eight percent (8%) of gross sales. The regulatory license fee shall be eight percent (8%) on gross retail sales of package malt beverages. Thereafter, the City Council shall adopt at the budget adoption for each subsequent fiscal year, such annual rate for the regulatory license fee as shall be reasonably estimated to ensure full reimbursement to the City for the cost of any additional policing, regulatory, or administrative expense related to the sale of alcoholic beverages in the City. Should the City fail to address the regulatory license fee in any budget, then the regulatory license fee shall remain at the level at which it was last fixed until such time as the City Council shall adjust the fee.

Murray, Ky., Alcoholic Beverages Control Ordinance 2012-1585, § 2.5 (2012). Kentucky Administrative Regulation 804 KAR 10:031 defines the following as included under "reasonable costs and expenses":

> (1) Employment, salary, and benefits of the city or county alcoholic beverage control administrator and staff who administer alcoholic beverage control laws;
> (2) Office supplies and equipment for the city or county to administer an alcoholic beverage control office;
> (3) Office space for an alcoholic beverage control administrator and staff;
> (4) Travel costs and expenses for the city or county alcoholic beverage control administrator and staff;
> (5) Additional policing expenses that are directly related to the discontinuance of prohibition, which shall include only those costs and expenses incurred solely as a result of the discontinuance of prohibition that are over and above any policing expenses previously incurred; and
> (6) Miscellaneous costs and expenses solely and directly related to the discontinuance of prohibition, if the following information is included on the Calculation Form for Alcohol Regulatory Fee in First Year Following Repeal of Prohibition:
>     (a) A description of the expenditure;
>     (b) A detailed explanation of the necessity of the expenditure as it related to the discontinuance of prohibition; and
>     (c) The cost of the expenditure.

808 KAR 10:031.

BFC Enterprises, LLC owns and operates two retail package liquor stores in Murray, Kentucky. [R. 1 at 2.] BFC alleges that Murray established a rate for the license fee "without regard to the cost of any additional increased policing, regulatory or administrative costs associated with the discontinuance of prohibition," as required in KRS 243.075. [*Id*. at 5.] BFC claims that this essentially amounts to "an income tax, or an illegal regulatory license fee, to benefit the overall budget." [*Id*.] BFC alleges that Murray's enforcement of the "illegal regulatory license fees" against licensed alcohol retailers but "against no other classes" violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and is "unlawfully arbitrary" pursuant to the Kentucky Constitution, § 2. [R. 1 at 6.]

On July 24, 2017, BFC filed the Complaint against Murray. [R. 1.] On August 25, 2017, Murray filed the Motion to Dismiss, [R. 7], that is currently before the Court.

**STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc.,*

552 F.3d at 434 *(citing Great Lakes Steel, 716 F.2d at 1105)*. "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

**DISCUSSION**

Murray argues two points in support of its Motion to Dismiss: (1) BFC fails to state an equal protection claim because "it does not allege that it was treated differently than other similarly situated businesses," and (2) even if BFC was treated differently than similarly situated businesses, Murray has a rational basis for imposing the license fee on the sales of alcoholic beverages. [R. 7 at 4, 7 (Murray Motion to Dismiss Memorandum).]

**I.      Whether BFC is Similarly Situated to Other Murray Businesses**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. Amend. XIV, § 1). "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). If the law in question does not distinguish on the basis of race, gender, or between in-state

and out-of-state businesses, or long-time or new residents, then the law is subject to rational-basis review. *Fitzgerald v. Racing Ass'n*, 539 U.S. 103, 107 (2003). Here, both parties agree that rational basis is the correct analysis, as none of the other circumstances apply. [R. 7 at 4-5; R. 8 at 12 (BFC Response).] Under rational-basis review,

> the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on the which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.

*Fitzgerald*, 539 U.S. at 107 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11-12 (1992) (citations omitted)). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440.

First, the Court must acknowledge Murray's argument that BFC failed to allege that it was treated differently than similarly situated businesses. As previously stated, one of the fundamental objectives of the Equal Protection Clause is that "all persons similarly situated should be treated alike." *Cleburne*, 473 U.S. at 439. In its Complaint, BFC implies that it is being treated unfairly compared to other businesses in Murray, but does not identify any businesses in particular or explain why businesses in Murray that do not sell alcohol are similarly situated. For instance, BFC states: "The manner in which Murray enforces the illegal regulatory license fees against the class of licensed alcoholic beverage businesses and against no other classes is a violation of equal protection of rights under the U.S. Const. Amend. XIV and is unlawfully arbitrary under Kentucky Constitution, § 2." [R. 1 at 6, ¶ 20.][2] In its Response to Murray's

---

[2] Another example of such an implication is later in the Complaint when BFC states: "The City of Murray's enforcement of the ordinance at issue is an unfair administration of a KRS 243.075, and the unequal treatment of Plaintiff, as a licensed alcoholic beverage business, amounts to a conscious violation of the principle of uniformity." [R. 1 at 8, ¶ 37.]

5

Motion to Dismiss, BFC clarifies that "Murray is treating BFC (and other licensed alcoholic beverage businesses) differently than other businesses and citizens by requiring BFC to pay an additional income tax to the City's overall budget." [R. 8 at 12.] Still, BFC fails to explain how it is similarly situated to the other businesses or citizens of Murray.[3] In other words, *Cleburne* dictates this issue as an overarching concern of Equal Protection, yet BFC failed to address it in its Complaint.

Similarly, in *Center for Bio-Ethical Reform, Inc. v. Napolitano*, the Sixth Circuit found that the amended complaint of a pro-life organization failed to make a claim under the Equal Protection Clause of the Fifth Amendment[4] when it failed to make any comparison to the treatment of similarly situated groups. 648 F.3d 365, 379 (6th Cir. 2011). There, the amended complaint claimed that it was challenging the policies of the defendants that "targets for disfavored treatment those individuals and groups that Defendants deem to be 'rightwing extremists.'" *Id*. at 367. The Sixth Circuit held that the amended complaint failed to make a plausible allegation that similarly situated organizations and individuals were treated differently, and that "plaintiffs fail[ed] to make any comparison to similarly situated groups . . . ." *Id*. at 379. In the case at hand, BFC has also failed to make any comparison to a similarly situated group. Although BFC mentions in its Response that it was treated differently than other businesses and citizens in Murray, it still fails to explain how they are similarly situated or state that they are similarly situated in the first place. *See Black v. Pension Benefit Guar. Corp.*, No. 09-13616, 2011 WL 3875055, at *6 (E.D. Mich. Sept. 2, 2011) ("The Court is therefore unable to draw the

---

[3] Although BFC argues that it is not making a "class of one" claim, the basic philosophy underlying the rational basis inquiry under the Equal Protection Clause implies that the parties involved should be similarly situated. *See Cleburne*, 473 U.S. at 439.
[4] The Court notes that Equal Protection claims under the Fifth Amendment are to be evaluated in the same fashion as those under the Fourteenth Amendment. *See Center*, 648 F.3d at 379 ("We evaluate equal protection claims against the federal government under the Fifth Amendment just as we would evaluate equal protection claims against state and local governments under the Fourteenth Amendment.").

inference that Defendants are liable for an equal protection violation since Plaintiffs have not plead facts that would allow this Court to determine that Plaintiffs are similarly situated to the other retirees."); *see also Bah v. Attorney General of Tennessee*, No. 13-2789-STA-dkv, 2014 WL 2589424, at *12 (W.D. Tenn. June 10, 2014) (granting the motion to dismiss upon holding, amongst other findings, that "Plaintiffs have not alleged any facts to show that African hair braiders as a class, including Plaintiffs, are similarly situated for purposes of reciprocal licensing to manicurists as a class"). Thus, the Court cannot reasonably draw the inference that Murray is liable for an Equal Protection violation when BFC has not plead facts illustrating that it is similarly situated to other businesses in Murray that do not sell alcohol. Murray's Motion to Dismiss as it pertains to BFC's 14th Amendment Equal Protection claim is GRANTED.

## II.  Rational Basis Analysis

As the Court already found that BFC failed to plead an Equal Protection claim, it is unnecessary to further engage in the rational basis analysis at this time.

## III.  Violation of U.S.C. § 1983

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985)). In BFC's Complaint, BFC brings a claim under the 14th Amendment for which § 1983 could provide a remedy. However, the Court has dismissed this claim. Left behind for the Court to consider is the § 1983 count of BFC's Complaint, in which it alleges the deprivation of the "constitutional rights of the freedom to choose and pursue a career and engage in any of the common occupations which may not be arbitrarily denied by the State." [R. 1 at 8, ¶ 41.] BFC does not identify an area of the Constitution that would support this claim nor does it provide any

case law. The Court assumes BFC is referring to the language of *Meyer v. Nebraska* in which the Supreme Court listed certain liberties that fall under the Fourteenth Amendment, such as "to engage in any of the common occupations of life." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The Supreme Court later stated that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Bd. of Bar Exam. of State of New Mexico*, 353 U.S. 232, 238–39 (1957). Even if BFC were alleging that the license fee prevents it from engaging in its career and occupation as a retailer of alcohol, the simple truth is that the fee does not prevent BFC from operating its stores. BFC claims the tax costs it a "loss of customer goodwill, damage to BFC's business and economic interests, and other injuries," but it never claims the fee will exclude it from its occupation of selling alcohol. [R. 1 at 7, ¶ 29.] In contrast, in *Schware*, the defendant New Mexico Board of Law Examiners' decision to deny the plaintiff Rudolph Schware's license to practice law in New Mexico prohibited him from engaging in his occupation as an attorney. *Schware*, 353 U.S. at 238. BFC has no further constitutional claims for which § 1983 could provide a remedy. Thus, the portion of the Motion to Dismiss concerning BFC's § 1983 claim is GRANTED.

## IV. The State Law Claims

The Supreme Court has stated: "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). Furthermore, it is a matter of this Court's discretion whether to hear supplemental jurisdiction state law claims.

*Experimental Holdings, Inc.*, 503 F.3d at 521. Here, the Court finds that "the interests of judicial economy and the avoidance of multiplicity of litigation" do not "outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Thus, the Court declines to exercise supplemental jurisdiction over BFC's state law claims.

## CONCLUSION

For the foregoing reasons, Murray's Motion to Dismiss, [R. 7], is **GRANTED**. As the Court found that it is unnecessary to further engage in the rational basis analysis at this time, BFC's Motion to Take Notice of Response Exhibits, [R. 9], is **MOOT**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.


cc: Counsel of Record